### BERKSHIRE LAND CO. v. FEDERAL SECURITY CO.

#### Civ. A. 7845.

United States District Court
W. D. Pennsylvania.

June 25, 1951.

Alexander J. Barron, of Alter, Wright & Barron of Pittsburgh, Pa. and P. Nicholson Wood, of Philadelphia, Pa., for plaintiff.

Kenneth G. Jackson, and Joseph E. Madva, of Thorp, Bostwick, Reed & Armstrong of Pittsburgh, Pa., for defendant.

BURNS, District Judge.

#### Findings of Fact

1. Plaintiff is a Pennsylvania corporation. Defendant is a Delaware corporation, with an office or place of business in Fayette County, Pennsylvania. The amount in controversy, exclusive of interest and costs, is in excess of $3,000.

2. Plaintiff is the owner in fee of certain undivided interests in the Pittsburgh or River vein or seam of coal, together with certain mining rights, in and underlying certain tracts of land in Greene County, Pennsylvania. The undivided interests of plaintiff are equivalent to approximately 1,700 acres of the Pittsburgh seam of coal in place.

3. The aforesaid premises, on September 19, 1914, were owned in fee by one Josiah Van Kirk Thompson. The chain of title from that date is as follows:

a. On September 7, 1917, a decree of this Court adjudicated Thompson bankrupt.

b. On April 1, 1920, the trustees in bankruptcy of the Thompson estate conveyed the property in question to Gallatin Land Company, a corporation.

c. The Gallatin Land Company conveyed this property to Piedmont Coal Company, a corporation, on December 31, 1928.

d. The Piedmont Coal Company, in turn, conveyed it to the Union Trust Company of Pittsburgh in the autumn of 1936.

e. The Union Trust Company of Pittsburgh conveyed it to plaintiff, then known as The Berkshire Coal Company, in December, 1939.

f. Plaintiff conveyed it to one Henry B. Maguire and M. E. Kelly, co-partners, as tenants in partnership, on December 30, 1941.

g. Maguire and Kelly conveyed it back to plaintiff on April 6, 1944.

4. All six aforementioned deeds were duly recorded in the Office of the Recorder of Deeds of Greene County, Pennsylvania.

5. On September 19, 1914, Thompson executed and delivered to one William A. Stone a mortgage covering this property. The mortgage was in the principal sum of $200,000.00, was payable two years after date, and bore interest at the rate of six (6%) per cent per annum, payable semi-annually. This mortgage was recorded in the Office of the Recorder of Deeds of Greene County, Pennsylvania. It has not been satisfied of record.

6. Both the December 30, 1941, and April 6, 1944, deeds, noted in paragraphs 3f and 3g, above, contained (a) the recital of the existence of said September 19, 1914, mortgage, (b) the statement that Maguire and Kelly assumed no liability for the satisfaction of the mortgage, and (c) a clause that the deed was made and accepted "subject to * * * any and all rights of others in and to any part of the premises herein mentioned and herein conveyed, as the same may legally exist at the date of this deed * * *."

7. At the time when Thompson gave Stone the mortgage, Thompson was president of the First National Bank of Uniontown, Pennsylvania, and Stone was a vice-president, director, and substantial stockholder of the Citizens Title and Trust Company, Uniontown, Pennsylvania. Also, Stone and one George H. Bortz controlled the stock of Prospect Coal and Coke Co., a Pennsylvania corporation which, beginning in 1907, had acquired coal and coke lands from Thompson.

8. Thompson gave Stone the 1914 mortgage as security for loans by, and obligations of, Thompson and the First National Bank. Stone had personally endorsed or guaranteed some of those obligations.

9. The First National Bank of Uniontown closed down several months after the mortgage was executed.

10. Stone assigned portions of the mortgage to the banks holding the notes of Thompson and Stone.

11. The assignee banks were paid, or their notes were renewed, by W. A. Stone and Company, a partnership in which, until 1917, Stone and Bortz each had a one-half interest. As a consequence of the payments and renewals, the banks reassigned their interest in the mortgage to Stone. Partnership funds were used to make the payments, with the knowledge and consent of Bortz.

12. The 1914 mortgage recites that Thompson gave Stone a bond on the same date. That bond was not offered in evidence.

13. On May 1, 1922, in two instruments, Stone assigned the 1914 mortgage and bond to defendant, Federal Security Company, a Delaware corporation primarily doing business in Pittsburgh, Pennsylvania. The mortgage assignment was recorded on May 10, 1922.

14. On May 26, 1922, Thompson handed a check in the sum of approximately $50,000 to Stone, in the presence of Bortz. This check was not introduced in evidence. The available documentary evidence and depositions, however, lead me to the determination that this check was the identical check for $51,500.00, which was signed by one William A. Seifert, as treasurer of defendant, was drawn on a Cleveland or McKees-

port bank, and was made payable to the order of Stone.

15. Stone and Bortz treated the check as discharging all debts which Thompson owed the W. A. Stone and Co. firm and which had been secured by the 1914 mortgage. Stone simultaneously handed Thompson the mortgage.

16. At the time when defendant issued the aforementioned check, A. A. Thompson (hereinafter called " A. A. T."), Thompson's son was the principal stockholder of defendant.

17. On May 27, 1922, in two instruments, Thompson assigned the 1914 mortgage and bond to defendant. "A. A. T." witnessed both of these instruments signed by his father. The mortgage assignment was not recorded.

18. The available documentary evidence and depositions convince me that defendant prepared the two Stone and the two Thompson assignments at about the same time, and that execution of the four instruments was part of a plan whereby defendant succeeded to all unsatisfied mortgagee rights.

19. Defendant has received no money in payment of the principal or interest of the mortgage since it acquired the mortgage in May, 1922.

20. Defendant has been in continuous possession of the mortgage indenture since May 1, 1922.

21. Thompson died in 1932 or 1933, and Stone died in 1938 or 1939.

22. Plaintiff has paid all taxes assessed against the property since acquisition of title in 1939; but neither plaintiff nor its predecessors have mined the coal in place, which is still undeveloped.

23. Plaintiff has failed to prove that the debt evidenced by the mortgage has been paid.

### Conclusions of Law

1. This Court has jurisdiction of the parties and the subject-matter.

2. The facts as found by this Court render it unnecessary to decide whether this Court has the power to grant the kind of relief requested by plaintiff.

3. While Pennsylvania law raises a presumption of payment because of the lapse of more than twenty years from the date of maturity of the mortgage, such presumption does not constitute evidence and cannot take the place of evidence. See the analysis of Judge Staley in Dostal v. Baltimore & O. R. Co., 3 Cir., 1951, 189 F.2d 352.[1]

4. Defendant has met its burden of coming forward and offering evidence which overcomes the presumption created by the passage of time.

5. Plaintiff has failed to meet its burden of proving, by satisfactory evidence, payment of the indebtedness secured by the mortgage.

6. Consequently, plaintiff has not established that it is entitled to the cancellation of the mortgage.